IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

No. 06cv2725
PAM/JSM

Phillip David Schaub,

           Plaintiff,

vs.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The County of Olmstead; Olmstead County Adult Detention Center; Steven VonWald; Dr. Molella; International Home; Bernie Seizer; John Does 1-6
           Defendants.

Philip Schaub, as and for his Complaint against Defendants, The County of Olmstead, Olmstead County Adult Detention Center, Steven VonWald, Dr. Molella, International Home, Bernie Seizer, John Does 1-6 sued in their official capacities, respectfully sets forth and alleges as follows:

## INTRODUCTION

This action is brought pursuant to Title 42 U.S.C. § 1983 for the purpose of having declared and adjudged unconstitutional, the actions of Defendants with respect to the inadequate housing and medical treatment provided to Plaintiff during his incarceration.

SCANNED
JUN 29 2006
U.S. DISTRICT COURT MPLS

1

## JURISDICTION

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331, in that this is a civil suit arising under the Constitution of the United States.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1343(a) in that this action seeks to redress the deprivation, under color of state law, of rights secured to the plaintiff by the First, Eighth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. 1988 and 42 U.S.C. 2000, which authorize the award of attorney's fees and costs to prevailing parties pursuant to 42 U.S.C. 1983 and the RFRA.

The jurisdiction of this court is invoked pursuant to the provisions of 42 U.S.C. § 1983, 28 U.S.C. § 1983, 28 U.S.C. § 1331 (b) which presents a federal question and 28 U.S.C. § 1343 (a)(3) brought to address the deprivation under the color of state law of rights, privileges and immunities, secured by the Constitution and laws of the Untied States. The rights herein sought to be redressed are the rights guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States as hereinafter more fully appears. The Court has jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

## VENUE

Venue is proper in this United States Federal District pursuant to the provisions of Title 28 U.S.C. § 1391 (b) in that this is a civil action wherein

jurisdiction is not founded solely on diversity of citizenship; the Plaintiff herein was incarcerated at Olmstead County Adult Detention Center at all times relevant herein to this Complaint, and upon information and belief, the Defendants, work and reside within the district.

## EXHAUSTION

Plaintiff has exhausted all available administrative prison remedies regarding matters described in the Complaint.

## PARTIES

1.  Plaintiff Philip Schaub was incarcerated at Olmstead County Adult Detention Center (hereinafter "Olmstead") during the events described herein under MC#: 3-755-021, at 101 4th Street SE, Rochester, MN 55904.

2.  Under Minnesota state law, Defendant Olmstead County of Olmstead is responsible for the policies, procedures, and practices implemented by its various agencies, agents, departments, employers, and for injuries occasioned thereby.

3.  Upon information and belief, Defendant Steven VonWald, an actual person, was a resident of the County of Olmstead, United States of America, was the duly appointed Director of the Olmstead County Adult Detention Center and as such had jurisdiction and control of the government, administration, disposition, discipline of the Olmstead County Adult Detention Center, the staff, and inmates thereof. Defendant VonWald caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Olmstead. He

3

has, therefore, directly and proximately caused, and will continue to cause in the future, many of the damages, injuries and violations set forth below.

4.  Upon information and belief, Dr. Molella was employed as a contract physician practicing at Olmstead and was responsible for the diagnosis, treatment and care of the inmates at Olmsted at all times relevant to the Complaint herein. As such, he has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practice that prevail at Olmstead, as described below with regard to the refusal to provide or implement timely diagnosis and treatment of serious physical disease and medical conditions. He has, therefore, directly and proximately caused, and will continue to cause in the future, the damages, injuries and violations of rights set forth below.

5.  Upon information and belief, International Home (hereinafter "International") was a nursing agency employed by Olmstead and was responsible for the diagnosis, care and treatment of the inmate at Olmstead at all times relevant to the Complaint herein. As such, it has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practice that prevail at Olmstead, as described below with regard to the refusal to provide or implement timely diagnosis and treatment of serious physical disease and medical conditions. It has, therefore, directly and proximately caused, and will

4

continue to cause in the future, the damages, injuries and violations of rights set forth below.

6.  Upon information and belief, Bernie Seizer was a Probation Officer employed by Olmstead County and would frequently visit Plaintiff during his confinement at Olmstead. As such, he has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practice that prevail at Olmstead, as described below with regard to the refusal to provide or implement timely diagnosis and treatment of serious physical disease, medical conditions and treatment.

7.  All of the above-referenced Defendants have acted and continue to act under the Color of State law at all times relevant to the Complaint herein.

8.  Plaintiff sues all public employees, both in their official and individual capacities.

## FACTS

9.  Plaintiff was confined to Olmstead from March 15, 2003 to April 29, 2003, and assigned identification number MC#: 3-755-021.

10. Plaintiff is a paraplegic as a result of a T4 spinal cord injury sustained in a motor vehicle accident in 1984.

11. Plaintiff was confined to an eight by ten (8 X 10) foot cell which contained a bed and a toilet.

12. The steel bed was approximately seven by three (7 X 3) feet equipped with a vinyl mattress which was approximately 6 (six) inches thick.

13. Plaintiff was provided with one sheet, one blanket, and three (3) pillows, each approximately two (2) inches thick which Plaintiff divided between his head and his feet.

14. Plaintiff was in the Work Release Program from March 15, 2003 through April 29, 2003.

15. During the time Plaintiff was in Work Release, he returned to his home approximately two (2) hours per day, with Court permission, to use the bathroom and shower as he could not use the facilities at Olmstead.

16. While in Work Release Plaintiff's cell was equipped with a porcelain commode which was to low, making it impossible to transfer from the commode to his wheelchair.

17. During the time Plaintiff was in the Work Release Program, he suffered skin breakdown in the heel of his feet, as he was unable to raise them to allow the fluid to drain.

18. The skin breakdown necessitated the application of antibiotic cream and bandages to the area.

19. Beginning day four (4) of his incarceration, Plaintiff began writing notes to Defendant Molella and other members of the prison staff requesting that the bandages be changed.

20. Plaintiff received correspondence from prison officials informing him that the bandages were to be left in his cell and he was to change them himself.

21. Plaintiff again contacted prison officials, including Defendant Seizer and informed them that he was unable to change the bandages without assistance.

22. As a result, Plaintiff was informed that Defendant International, a nursing agency, was to come to Olmstead twice a week and to change the bandages on his feet every other day, instead of three (3) times a day, as required by his doctor at the Mayo Clinic.

23. It was not until his eighth (8th) day of confinement that two (2) nurses were sent to Olmstead to attend to Plaintiff's feet at which time the infection in his feet was so severe that rotting flesh came off his feet with the bandages as they were removed.

24. The infection was so severe that Plaintiff required hospitalization and antibiotics to control and cure it.

25. By this time, Plaintiff had gone eight (8) days without a shower or a bandage change.

26. Plaintiff's cell was also equipped with a "call" button used to summon help in the event of an emergency; however, the button was built into the wall by the bed, approximately three (3) feet up the wall.

27. Plaintiff could not reach the "call" button if he was not in bed.

28. Prison officials were made aware of the situation, however, chose to ignore it.

29.     On or about April 24, 2003, the ninth (9th) day of confinement, Plaintiff's right hand, wrist and forearm became red, stiff and swollen, rendering it unusable.

30.     Prison officials were made aware of the situation and once again, chose to ignore it.

31.     Plaintiff was later diagnosed with celluitis in his right hand, as well as a staph infection in his open wounds and a pseudomonas infection in his bladder, requiring hospitalization and antibiotics.

32.     On or about April 29, 2003, while attempting to transfer from the commode to his wheelchair, Plaintiff slipped and fell, fracturing his right femur.

33.     Plaintiff was unable to reach the call button on the wall, and remained on the floor for approximately thirty (30) minutes, yelling for help, waiting for one of the prison guards to find him.

34.     When no one came, Plaintiff was forced to crawl back to his wheelchair and drag himself into it, all with a broken leg.

35.     Plaintiff was taken to the Mayo Clinic on April 29, 2003 where an open reduction with internal fixation was performed.

36.     Plaintiff was confined to the Mayo Clinic until May 6, 2003 at which time he was permitted to return home until mid July to allow his leg to heal.

37.     In July of 2003, Plaintiff was ordered to return to Olmstead.

38.     Plaintiff was no longer in the Work Release Program and as a result, was not permitted to return home to attend to his bathroom needs.

39. Upon his return to Olmstead, Plaintiff was placed back in the general population in a non-handicapped accessible cell.

40. Prison authorities refused to allow Plaintiff to return home to attend to his daily bathroom needs.

41. Plaintiff was unable to use the non-handicapped commode and was forced to soil himself for two (2) days until he was provided with an adaptive device for the commode.

42. Plaintiff was unable to use the shower because the stall itself was too narrow and Plaintiff was unable to maneuver his wheelchair into the stall.

43. Additionally, the shower was not equipped with a padded bench or railings to allow him to transfer between the shower and his wheelchair.

44. During his confinement at Olmstead, Dr. Stolpe, his doctor at the Mayo Clinic, advised Defendant VonWald, in writing, that Plaintiff required a handicapped accessible cell, together with a padded toilet seat, adequate accessible shower with a padded shower bench, together with a mechanism for elevating his legs as well as a pressure-relieving mattress on his bed.

45. None of these items were provide to Plaintiff.

46. As result of sleeping on a flat mattress, Plaintiff suffered skin breakdown in the sacral region of his back.

47. Plaintiff was then confined to the Mayo Clinic from July 24, 2003 through July 27, 2003 for sacral decubitus, Stage I, ischial decubitus, stage II, bilateral posterior ankle decubiti, stage III, hypokalemis and popular.

9

48. Plaintiff sustained a 2.5 cm ulcer in his right ischial region and a 2.5 cm ulcer in his right lateral maleous region.

49. Plaintiff also sustained an ulcer in his sacral region which measured eight by ten (8 X 10) cm and was five (5) inches deep, reaching to the bone, requiring surgical repair and treatment.

50. Olmstead ignored the special needs of Plaintiff as the cell in which Plaintiff was confined was not properly equipped for his needs.

51. The shower Plaintiff was provided with was not handicapped accessible.

52. The toilet seat provided to Plaintiff by Defendant Olmstead was improper for his needs.

53. The Defendants were aware of Plaintiff's special needs as they had been advised by medical doctors at the Mayo Clinic, however, chose to disregard them.

54. As a result of the Defendants failure to adequately meet the basic needs of Plaintiff, he was confined to various hospitals on several occasions to treat Plaintiff's broken leg and the various skin conditions and resulting infections.

55. Both Plaintiff's broken right femur as well as his numerous skin infections required several surgical interventions.

56. As a result of the poor conditions provided by Olmstead and significant medical issues of Plaintiff, Judge Jodi L. Williamson, Judge of District Court, issued an Order dated July 28, 2003 vacating Plaintiff's jail sentence and allowing him to return home.

## CAUSES OF ACTION

Plaintiff supports the following claims by reference to previous paragraphs of the Complaint herein.

### FIRST CAUSE OF ACTION
### Violations of 42 U.S.C. §1983:
### Refusing of Neglecting to Prevent

57.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 56 above with the same force and effect as if herein set forth.

58.    At all times relevant to this complaint, Defendants; Dr. Mollela; John Does 1-6 as employees of Olmstead were acting under the direction and control of Defendants Olmstead and Von Wald.

59.    Acting under color of law and pursuant to official policy or custom Defendants Olmstead and VonWald knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants Dr. Mollella; John does 1-6 in their duties to refrain from:

a. unlawfully discriminating against Plaintiff because of his disability;

b. engaging in a course of conduct which physically injured Plaintiff, to wit, the failure to provide the proper housing facilities, medical care and medical supplies;

c. Conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the State of Michigan.

11

60.	The deliberate indifference of Defendants, The County of Olmstead; Olmstead County Detention Center; Steven Vonwald; Dr. Molella; ; John Does 1-6 to Plaintiff's serious medical needs from March 15, 2003 through July 28, 2003 deprived Plaintiff of his rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

**SECOND CAUSE OF ACTION**

**Against All Defendants in their Official Capacities**
**Violation of the Fourteenth Amendment of the United States Constitution,**
**Actionable Pursuant to 42 U.S.C. § 1983**
**(Due Process)**

61.	Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations set forth in Paragraphs 1 through 60, above.

62.	Defendant's acts, omissions, policies and practices complained of herein are a substantial departure from accepted professional judgment, standards and practices, constitute punishment, and reflect deliberate indifference to the known or obvious consequences to Plaintiff, including actual harm and pervasive risk of harm, and thereby unlawfully burden Plaintiff's protected liberty interest and violate Plaintiff's rights under the due Process Clause of the Fourteenth Amendment of the United States Constitution.

63.	Defendants' acts, omissions, policies and practices complained of herein have caused Plaintiffs to suffer economic and non-economic damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**Against All Defendants in their Official Capacities Violation of the Eighth Amendment (as Incorporated by The Fourteenth Amendment) of the United States Constitution, Actionable Pursuant to 42 U.S.C. § 1983(Cruel and Unusual Punishment)**

64.     Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations set forth in Paragraphs 1 through 63, above.

65.     Defendants' acts, omissions, policies and practices complained of herein constitute cruel and unusual punishment and subject Plaintiff to actual harm, to pervasive risk of harm and to other unlawful conditions in violation of the Eighth Amendment of the United States Constitution (as incorporated by the Fourteenth Amendment).

66.     Plaintiff seeks a judgment declaring that the acts, omissions, policies and practices complained of herein are prohibited by the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983 and seek injunctive relief set forth in the prayer for relief.

## FOURTH CAUSE OF ACTION

**Against All Defendants in their Individual Capacities Violation of the Eighth Amendment (as incorporated by the Fourteenth Amendment) of the United States Constitution, Actionable Pursuant to 42 U.S.C. § 1983 (Cruel and Unusual Punishment)**

67.     Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations set forth in Paragraphs 1 through 66 above.

68. Defendants' acts, omissions, policies and practices complained of herein constitute cruel and unusual punishment and subjected Plaintiff to actual harm, to pervasive risk of harm and to other unlawful conditions in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

69. Defendants' acts, omissions, policies and practices complained of herein have caused Plaintiff to suffer economic and non-economic damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Violation of Eighth and Fourteenth Amendments Totality of Condition Affecting Physical Health

70. Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations as set forth in Paragraphs 1 through 69, above.

71. As a direct, proximate result of Defendants' acts and omissions, Defendants have violated the basic human dignity of Plaintiff, and have abridged his right to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## SIXTH CAUSE OF ACTION
### Violation of Eighth and Fourteenth Amendments Denial of Timely Access to Medical Care

72. Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations as set forth in Paragraphs 1 through 71, above.

73. Plaintiff was denied timely access to medical care and evaluation by specialists. Symptoms requiring emergency or urgent care were not promptly recognized and treated.

74. Defendant's deliberate indifference to Plaintiff in serious need of medical care, by denying medicines and other care by a doctor, or by providing care in such a way as to cause acute pain, anxiety, and potentially serious physical and medical injury constitutes cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the United States Constitution. Defendants' actions have caused serious and unreasonable harm to Plaintiff's health.

## SEVENTH CAUSE OF ACTION
### Failure to Adopt Policies and Procedures and Failure to Train and Supervise

75. Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations as set forth in Paragraphs 1 through 74, above.

76. Defendants have failed to draft, to adopt and to implement governing policies and procedures necessary to protect paraplegic inmates and have failed to supervise or to train directors, administrators and staff despite an obvious need for such training and supervision and despite the fact that the punitive conditions and discrimination Plaintiff faced was a highly predictable consequence of their failure to provide such training and supervision.

77.	Defendants, despite being put on notice by Plaintiff's doctors outside of Olmstead regarding his specific medical and housing requirements, failed to take reasonable steps to protect and provide for Plaintiff.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks for judgment against defendants in an maount in excess of $50,000.00 for reasonable nominal, compensatory and punitive damages, as allowed by law, against each Defendant jointly and severally together with such other and further relief as this court deems just, proper and equitable.

Dated:  June 28, 2006

                            HANSEN, DORDELL, BRADT, ODLAUG & BRADT, P.L.L.P.

                            By /s/
                            Patrick W. Ostergren     #326276
                            Attorneys for Plaintiff
                            3900 Northwoods Drive, Suite 250
                            St. Paul  MN  55112-6973
                            651/482-8900