UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Phillip David Schaub,<br><br>    Plaintiff,<br><br>vs.<br><br>The County of Olmsted, Olmsted County Adult Detention Center; Steven VonWald; Bernard Sizer; John Does 1-6,<br><br>    Defendants. | Case No. 06-CV-02725 JMR/FLN<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## **INTRODUCTION**

This is Defendants' Memorandum of Law in Support of their Motion for Summary Judgment.

Plaintiff is a paraplegic who was incarcerated in the Olmsted County Adult Detention Center ("ADC") because of a felony conviction for periods of time in March and April of 2003 and July 2003.  Plaintiff has asserted eight causes of action.  However, while the eight causes of action are labeled something different in the Complaint, ranging from violations of the Eighth and Fourteenth Amendments to negligence, each are based on the theory that Plaintiff was denied proper medical care.  Defendants assert they are entitled to summary judgment on all causes of action because Plaintiff was provided with proper medical care and treatment and there is no evidence of a deliberate disregard of serious medical need.  Defendants request that their Motion for Summary Judgment be granted.

## STATEMENT OF DOCUMENTS RELIED UPON

Defendants' Memorandum of Law relies upon the following documents for purposes of their Motion for Summary Judgment:

1. Affidavit of Stacy Sinner

2. Affidavit of Patricia J. Crandall

3. Affidavit of Robin G. Molella, M.D.

4. Plaintiff's Amended Complaint (Docket No. 3)

5. Olmsted County policy on providing detainees with necessary care (Sinner Aff. Exhibit "A"; Crandall Aff. Exhibit "A")

6. Olmsted County Adult Detention Center medical chart notes regarding Plaintiff's care and treatment (Sinner Aff. Exhibit "I"; Crandall Aff. Exhibit "B"; Molella Aff. Exhibit "B")

7. Plaintiff's Sentencing Order (Sinner Aff. Exhibit "B")

8. March 4, 2003 Memorandum of Sergeant Alfredo Castellanos (Sinner Aff. Exhibit "C")

9. April 29, 2003 report of Deputy Rich Carlson (Sinner Aff. Exhibit "D")

10. April 29, 2003 report of Deputy Jon Root (Sinner Aff. Exhibit "E")

11. May 13, 2003 letter from Judge Jodi L. Williamson to ADC Director Steven VonWald (Sinner Aff. Exhibit "F")

12. ADC Director Steven VonWald's response to Judge Williamson (Sinner Aff. Exhibit "G")

13. Judge Williamson's May 16, 2003 Order denying Plaintiff's Motion to modify his sentence (Sinner Aff. Exhibit "H")

14. Judge Williamson's Order dated July 24, 2003, regarding Plaintiff's release to address his medical issues (Sinner Aff. Exhibit "J")

15. Judge Williamson's Order dated July 28, 2003, vacating the remainder of Plaintiff's jail sentence (Sinner Aff. Exhibit "K")

16. Curriculum Vitae and Bibliography of Robin G. Molella, M.D. (Molella Aff. Exhibit "A")

## **FACTS**

The ADC is a modern detention facility connected to the Olmsted County Government Center. Sinner Aff. ¶ 3. Construction was completed in 1993. Sinner Aff. ¶ 3. At all times relevant to this case, the ADC had an intake unit, a main housing unit, a work release unit, a female unit and a special management unit. Sinner Aff. ¶ 3. The ADC has a medical staff that provides medical care to detainees. Sinner Aff. ¶ 3. At the time of Plaintiff's incarceration, the Director of the ADC was Steven VonWald. Captain Stacy Sinner, who is now the Director of the ADC, was responsible for day-to-day supervision of the operations of the ADC. Sinner Aff. ¶ 7.

At all times relevant to this case, the ADC was accredited by the American Correctional Association ("ACA") and the National Commission on Correctional Health Care ("NCCHC"). The NCCHC accreditation certified the ADC was complying with the NCCHC Standards for Health Services in Jails. Sinner Aff. ¶ 3.

The ADC contracts with the Olmsted County Public Health Department to staff the medical unit of the ADC. The ADC provides full health care services to detainees after they have been booked into the ADC. Sinner Aff. ¶ 4; Crandall Aff. ¶ 3. The medical unit is staffed by one and one half nursing positions and a part time physician, psychologist, and social worker. Sinner Aff. ¶ 3. The nurses staff the ADC during

normal working hours Monday through Friday. The physician is present two days per week during normal business hours. Sinner Aff. ¶ 4; Crandall Aff. ¶ 3.

Patricia Crandall, R.N. supervises the medical unit and is on site each weekday. The medical staff is supervised by Medical Director Robin Molella, M.D. Molella Aff ¶ 3-4; Sinner Aff. ¶ 4; Crandall Aff. ¶ 3-4.

Dr. Molella is a Mayo Clinic physician who is a Board Certified specialist in internal medicine and community medicine who provides services to the ADC via a contract between Olmsted County and Mayo Clinic. Molella Aff ¶ 3; Sinner Aff. ¶ 4.

The medical unit consists of a waiting room, storage room, tub room, and two clinic rooms. Sinner Aff. ¶ 5. Detainees needing emergency care are sent to Olmsted Community Hospital or St. Mary's Hospital Emergency Trauma Unit. Sinner Aff. ¶ 5; Crandall Aff. ¶ 3. The ADC has a written policy to provide detainees with necessary medical care. Sinner Aff. Exhibit "A"; Crandall Aff. Exhibit "A"; Sinner Aff. ¶ 3; Crandall Aff. ¶ 3. Detainees housed in work release are responsible for their own medical care and are permitted to obtain medical care while away from the ADC. Sinner Aff. ¶ 4; Crandall Aff. ¶ 3.

The ADC is handicapped accessible. The main housing unit and the work release unit were constructed with handicapped accessible cells and showers. This included the cells occupied by Plaintiff. The toilets have grab bars, the showers have a shower bench, and there are no thresholds on the doors which could impede use of a wheelchair. Sinner Aff. ¶ 6.

Plaintiff is paraplegic. Plaintiff's Amended Complaint at ¶ 9. On November 20, 2002, Plaintiff pled guilty to Criminal Sexual Conduct in the Second Degree, a felony. On January 16, 2003, Plaintiff was sentenced to serve 180 days in the ADC as part of the punishment for the conviction. A copy of the Sentencing Order is attached to the Affidavit of S. Sinner as Exhibit "B." Plaintiff was instructed to come to the ADC to begin serving his sentence on March 4, 2003. Sinner Aff. ¶ 7. Plaintiff was allowed work release privileges. He was to serve his sentence in the work release unit in a handicapped accessible cell. Sinner Aff. ¶ 7. Sergeant Alfredo Castellanos was given the responsibility of managing Plaintiff's intake into the facility. Sinner Aff. ¶ 7.

Sgt. Castellanos met with Plaintiff on March 4, 2003, upon his entry to the ADC. Sgt. Castellanos put a plan in place to address Plaintiff's special needs. Sgt. Castellanos' memorandum to ADC staff regarding Plaintiff is attached to the Affidavit of S. Sinner as Exhibit "C"; Sinner Aff. ¶ 7. Sgt. Castellanos wrote that he interviewed Plaintiff regarding his disability and what types of tasks he could perform. Sgt. Castellanos wrote: "Detainee Schaub presented many obstacles regarding shower and toilet use. I was to the point of placing him in the special management unit, so medical staff could handle all of his needs, when I presented him with that option, he became more cooperative and willing to be creative." Sinner Aff. Exhibit "C"; Sinner Aff. ¶ 7.

According to his memorandum, Sgt. Castellanos observed Plaintiff get from his wheelchair to the toilet, agreed to allow Plaintiff to go to his mother's house to eat lunch and take a bath "so we don't have to deal with the shower issue." Sinner Aff. Exhibit "C"; Sinner Aff. ¶ 7. Sgt. Castellanos authorized two mattresses for his bunk, so Plaintiff

5

could get into and out of bed without scraping himself on the metal edge of the bunk. A special daily admittance process was also put in place. Sinner Aff. Exhibit "C"; Sinner Aff. ¶ 7. Plaintiff was on work release so he was responsible for his own medical care at that time. Sinner Aff. ¶ 4, 7.

On April 29, 2003, Mr. Schaub allegedly fell while trying to transfer himself from his wheelchair to the toilet. He alleges he broke his femur in the fall. Plaintiff's Amended Complaint at ¶ 20. According to ADC records, it was not clear Plaintiff's leg was broken at that time. Sinner Aff. ¶ 8.

The Detention Deputies on duty around that time were Rich Carlson and Jon Root. Sinner Aff. ¶ 8. Their written records of the fall are attached to the Affidavit of S. Sinner as Exhibits "D" and "E." Plaintiff was offered transportation to the emergency room and turned it down. Sinner Aff. ¶ 8. Plaintiff transported himself to the emergency room where he was treated for the femur fracture. Sinner Aff. ¶ 8.

On May 12, 2003, Plaintiff moved the Olmsted County District Court to allow him to serve the balance of his sentence on electronic home monitoring. The Olmsted County Attorney's Office opposed the request. Sinner Aff. ¶ 10.

On May 13, 2003, Judge Jodi L. Williamson wrote ADC Director Steven VonWald to obtain input on whether the ADC could accommodate Plaintiff's needs. A true and correct copy of Judge Williamson's letter is attached to the Affidavit of S. Sinner as Exhibit "F." A true and correct copy of Director VonWald's response is attached to the Affidavit of S. Sinner as Exhibit "G." Director VonWald wrote that it was his belief that the ADC had met Plaintiff's needs, that he had been given sufficient time out of the

ADC to meet his needs, that he had been instructed to bring in a toilet lift, that he was instructed to bring in "whatever mattress and cushions he needed to take care of the lower and upper extremity problem he experiences. Certainly we don't have a hospital bed that can be electronically adjusted but that we felt that by allowing whatever he thought he needed in mattresses and cushions would fulfill the Doctor's orders." Director VonWald wrote: "My staff and I are of the opinion, with participation and cooperation from Schaub he can simply serve out his sentence without his medical condition deteriorating simply because he is staying in the ADC." Sinner Aff. Exhibit "G"; Sinner Aff. ¶ 10.

On May 16, 2003, Judge Williamson denied the request to modify Plaintiff's sentence. A true and correct copy of Judge Williamson's Order is attached to the Affidavit of S. Sinner as Exhibit "H." Sinner Aff. ¶ 10.

On July 16, 2003, Plaintiff returned to the ADC. Sinner Aff. ¶ 11. He was not eligible to be in the work release area since he no longer had a job. Plaintiff was put in the main housing unit. Sinner Aff. ¶ 11.

ADC Nurse Patricia Crandall evaluated Plaintiff on July 16, 2003. True and correct copies of the ADC medical chart notes of the medical care provided to Plaintiff on his return to the ADC are attached to the Affidavit of S. Sinner as Exhibit "I." Nurse Crandall evaluated and arranged to satisfy Plaintiff's needs for medical supplies and medication. She did an evaluation of the jail cell. Nurse Crandall arranged for raisers for Plaintiff's feet and head and a second mattress. Plaintiff was also allowed to have a sheepskin for his bed. Nurse Crandall arranged medical appointments for both July 24th and July 25th. Crandall Aff. ¶ 4-5.

On July 17, 2003, Plaintiff was seen by Robin Molella, M.D.  Dr. Molella noted that Plaintiff had three pressure sores.  These sores were dressed.  Dr. Molella noted she was not certain whether the ADC would be able to adequately adapt "to treat the current skin problems and to address prevention of further problems."  She noted the skin breakdown was a serious issue and close surveillance and assistance with dressing changes would be required.  Molella Aff. ¶ 6; Crandall Aff. ¶ 4-6.

On July 17, 2003, Nurse Crandall noted the plan was to attempt to locate a portable toilet with arm rails and a shower bench for use in the handicap shower.  She noted if that did not work, the ADC would offer Plaintiff the option of showering in the medical unit on Tuesdays through Fridays.  Nurse Crandall also discussed with Captain Sinner the possibility of moving Plaintiff to the work release unit if the plan for the main housing unit did not work.  Crandall Aff. ¶ 5-6.

On July 22, 2003, an assessment was performed by a nurse from an outside in-home nursing agency.  The pressure sores were again noted.  Plaintiff was approved for bi-weekly baths and changing of dressings.  He was also approved to have two extra pillows in his cell.  Sinner Aff. Exhibit "I"; Crandall Aff. ¶ 6.

On July 23, 2003, Plaintiff was bathed.  New dressings were applied.  A new skin breakdown was noted in the sacral region.  A note was made scheduling Plaintiff to see the doctor when she came in the next day.  Sinner Aff. Exhibit "I"; Crandall Aff. ¶ 6.

Plaintiff was seen by Dr. Molella on July 24, 2003.  Dr. Molella recognized the new breakdown in the sacral area, along with a strong odor and other issues.  She determined Plaintiff needed to be seen in the hospital and ordered him transported to St.

8

Mary's.  Sinner Aff. Exhibit "I"; Molella Aff. ¶ 9.  Dr. Molella noted in the chart on July 24, 2003, that she did not believe the ADC could continue to provide Plaintiff with the care he needed.  Dr. Molella noted that it was her recommendation that Plaintiff not be returned to the ADC.  Sinner Aff. Exhibit "I"; Molella Aff. ¶ 9.

That same day, July 24, 2003, Judge Williamson ordered Plaintiff released from the ADC until his medical issues resolved.  A true and correct copy of Judge Williamson's July 24, 2003 Order is attached to the Affidavit of S. Sinner as Exhibit "J."

On July 28, 2003, Judge Williamson vacated the remainder of Plaintiff's sentence.  A true and correct copy of Judge Williamson's July 28, 2003 Order is attached to the Affidavit of Sinner as Exhibit "K."  Plaintiff commenced this suit on July 29, 2006.

## ARGUMENT

To prevail on a motion for summary judgment, the moving party must establish that there is "no genuine issue as to any material fact and that the [moving party] is entitled to summary judgment as a matter of law."  Rule 56(c) Federal Rules of Civil Procedure.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); White v. Farrier, 849 F.2d 322 (8th Cir. 1988).

A material fact is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 245-250 (1986).  That inquiry revolves around a determination of "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law."  Brown v. Grabowski, 922 F.2d 1097, 1111 (3rd Cir.) quoting Anderson, 477 U.S. 251-252.

9

Once the moving party makes the case that summary judgment is appropriate because there is a lack of genuine issue of material facts, the party opposing the motion must do more than simply show that there is metaphysical doubt as to the material facts. The nonmoving party must come forward with specific facts establishing a genuine issue for trial. There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. <u>Matsushita Electric Industries Company v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87.

The evidence submitted must be viewed in a light most favorable to the nonmoving party. Nonetheless, summary judgment must be granted if the nonmoving party is unable to support each essential element of the claim since a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. <u>Celotex</u>, 477 U.S. 322-323.

**I.     SUMMARY JUDGMENT IS PROPER ON ALL PLAINTIFF'S CLAIMS ASSOCIATED WITH HIS INCARCERATION AT THE OLMSTED COUNTY ADULT DETENTION CENTER BECAUSE THERE IS NO EVIDENCE OF A DELIBERATE DISREGARD OF SERIOUS MEDICAL NEED.**

Plaintiff has asserted numerous causes of action in his Complaint related to his stay in the ADC. However, a careful review of the causes of action shows they are all based on the theory that Plaintiff was denied proper medical care. Thus, Defendants' arguments will address whether Plaintiff was denied proper medical care.

It is Defendants' position that Plaintiff was provided with quality care which included being seen by a medical doctor and professional nursing staff numerous times over eight days in July 2003. There is no contrary evidence. There is likewise no

evidence of a deliberate disregard of serious medical need which is an essential part of such a cause of action.  Thus, summary judgment is appropriate.

The Eighth Amendment, as applied to the states through the Fourteenth Amendment, provides the substantive law for denial of medical care claims.  It is well-established that deliberate indifference to the serious medical needs of a prisoner violates the Eighth Amendment's prohibition on cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  This may include "intentionally denying access to medical care, or intentionally interfering with treatment or medication that has been prescribed."  Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995).

In order to prevail on a claim of constitutionally inadequate medical care, the inmate must demonstrate that conduct of the detention facility officials amounted to "deliberate indifference to [the prisoner's] serious medical needs." Estelle, 429 U.S at 104; *see also* Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); Dulany v. Carnahan, 132 F.3d 1234, 1237-1238 (8th Cir. Mo. 1997); Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995); Taylor v. Turner, 884 F.2d 1088, 1089-90 (8th Cir. 1989).

The Supreme Court clarified the standards applicable to deliberate indifference claims in Farmer v. Brennan, 511 U.S. 825 (1994).  In Farmer, the Court set forth a two-pronged inquiry, comprised of an objective and subjective component.  Under the objective inquiry, the alleged deprivation must be "sufficiently serious" to constitute a deprivation of constitutional dimension.  Id. at 834.  The objective portion of the deliberate indifference standard requires a showing of "verifying medical evidence" that the defendants ignored an acute or escalating situation or that delays adversely affected

the prognosis given the type of injury in this case. Dulany, 132 F.3d at 1243 (*quoting* Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995).

In addition, under the subjective inquiry, the detention facility official must have sufficiently culpable state of mind. Farmer, 511 U.S. at 838; see also Coleman, 114 F.3d at 783; Dulany, 132 F.3d at 1239; Long v. Nix, 86 F.3d 761, 765 (8th Cir. Iowa 1996); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). The Plaintiff must establish more than ordinary negligence on the part of prison authorities in responding to his medical needs to establish a claim of medical mistreatment under the Eighth Amendment. Starbeck v. Linn County Jail, 871 F. Supp. 1129, 1144 (N.D. Iowa 1994) (*citing* Whitley v. Albers, 475 U.S. 312, 320 (U.S. 1986) and Duckworth v. Franzen, 780 F.2d 645, 651 (7th Cir. Ill. 1985) (Ordinary negligence and even 'gross negligence' are not enough)).

In describing the subjective component, presiding Courts have made clear that the failure to treat a medical condition does not constitute punishment under the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. Farmer, 511 U.S. at 837; Coleman, 114 F.3d at 783; Dulany, 132 F.3d at 1239; Blaisdell v. Tanner, 2002 U.S. Dist. LEXIS 5776 (D. Minn. Mar. 31, 2002). The subjective component is akin to "recklessness in the criminal law," where, to act recklessly, a "person must `consciously disregard' a substantial risk of serious harm." Farmer, 511 U.S. at 837, 839. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or

requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Long, 86 F.3d at 765.

The medical records and the Molella and Crandall affidavits demonstrate the efforts to care for Plaintiff on his return to the ADC in July 2003. Plaintiff's situation was evaluated by a nurse on July 16, 2003. Medical supplies and medications were ordered. The jail cell was evaluated and accommodations in the form of a second mattress and raisers for Plaintiff's feet and head were made. Medical appointments were scheduled for the following week. Plaintiff was seen by Dr. Molella the next day and his condition noted. His chart notes indicate Nurse Crandall continued to work on making arrangements to accommodate Plaintiff's needs. On July 22, 2003, Plaintiff was seen by a nurse from a home health care agency who arranged for him to be bathed and his wounds dressed the following day. That same day, Olmsted County Public Health Nurse Ann Polikowsky arranged through Dr. Molella for an additional antibiotic medication, Keflex, to help treat Plaintiff's condition. On July 22, 2003 and July 23, 2003, ADC nursing staff continued to work to arrange for equipment to assist in the care of Plaintiff. Also on July 23, 2003, Plaintiff was bathed and had new dressings applied to his sores by a nurse. The nurse also arranged for Plaintiff to be seen by Dr. Molella the following day. On July 24, 2003, Plaintiff was seen by Dr. Molella and a nurse. Dr. Molella determined that Plaintiff's condition required that he be transferred to the hospital. Plaintiff was taken to the hospital.

The efforts described above demonstrate there was constant, continuing care provided to Plaintiff. No one ignored his condition. There was no delay in treatment.

There is no evidence to support the objective portion of the Farmer v. Brennan test.

There is no evidence in the record that any ADC employee had a "culpable state of mind" or that they knew of a condition that created an excessive risk to Plaintiff's health and then failed to act on that knowledge. The record shows that the ADC staff was concerned about Plaintiff and kept an eye on his bed sores. The staff actively cared for Plaintiff including working to provide adaptive equipment, prescribing and administering needed medication, bringing in an outside nursing agency, changing dressings on his sores, seeking out different medications, and ultimately referring him to the hospital. Such conduct is not akin to recklessness. It does not demonstrate a conscious disregard of a substantial risk of serious harm.

Application of the deliberate disregard analysis to a case involving infections was made in Stewart v. Murphy, 174 F.3d 530, 538 (5th Cir. Tex. 1999). In that case, the inmate entered prison at age 67 with serious medical conditions that led to his being bedridden. He was essentially confined to a wheelchair and had multiple ailments. He eventually developed septic ulcers, which eventually killed him. On appeal, the court held that the prison doctors took affirmative steps to heal the plaintiff's bedsores, including transferring him briefly to a civilian hospital. The court held that mere negligence, even cumulative negligence, did not violate the decedent's constitutional rights. The record, the court said, did not show that defendants had subjective knowledge of a potentially fatal condition that they ignored. Id. at 534. The court affirmed the district court's granting of summary judgment in favor of the defendant prison because the failure to perceive that plaintiff's bedsores posed a threat to his life and failing to

14

consult and agree on a course of treatment was, at most, negligence, not deliberate indifference to his serious medical needs.

Here, Defendants made good-faith efforts to treat Plaintiff. Plaintiff has produced no evidence to support his allegations of deliberate indifference. At worst, Plaintiff can only question the medical judgment of the ADC medical staff. However, such errors in medical judgment do not establish deliberate indifference. It has been repeatedly held that errors in medical judgment do not rise to the level of cruel and unusual punishment. See, Long, 86 F.3d at 766 citing Estelle, 429 U.S. at 107.

The record as a whole in this case shows Defendants acted reasonably in response to the Plaintiff's medical needs. The Plaintiff has not presented evidence that the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of the Eighth Amendment right to be free from cruel and unusual punishment. Defendants respectfully request that the Motion for Summary Judgment be granted with regard to alleged denial of medical care.

**II.    IF THE COURT CONSTRUES PLAINTIFF'S COMPLAINT TO INCLUDE A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT, SUMMARY JUDGMENT WOULD BE PROPER AS THERE IS NO EVIDENCE OF A VIOLATION OF THE ADA.**

Title II of the ADA prohibits public entities from denying the benefits of services, programs and activities to a qualified individual with a disability on account of the individual's disability. The Supreme Court held in Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210-11 (1998), that Title II of the ADA applies to state prisons, and the term "qualified individual with a disability" extends to inmates. Ostendorf v.

15

Dawson County Corr. Bd., 2002 U.S. Dist. LEXIS 17676 (D. Neb. 2002).  To state a prima facie claim under the ADA, a plaintiff must show: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability.  Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).

    Defendants do not dispute that Plaintiff was disabled due to his paraplegia.  However, there is no evidence Plaintiff was denied any service, program or activity on account of disability.  Therefore, he has not met his burden of establishing a violation of the ADA.

    Although his Complaint is not specific, Plaintiff appears to assert that the ADA was violated because his jail cell did not comply with the ADA during his first period of incarceration.  However, as the Affidavit of Stacy Sinner makes clear, the ADC is a handicapped accessible facility.  The handicapped accessible cells have suitably wide doors and grab bars for the toilets.  The showers have a shower bench and there are no door thresholds which would impair movement by a wheelchair.  The facility was accredited by both the American Correctional Association and the National Commission on Correctional Health Care.  The NCCHC certified the ADC as complying with its standards for health services in jails.  Defendants ensured that disabled detainees had full access to the services provided by the ADC.

    Plaintiff was housed in an appropriately accessible facility.  There is no evidence to suggest the ADC was in violation of any provision of the ADA.  Summary judgment would be proper on any ADA claim Plaintiff claims to have alleged.

16

## **CONCLUSION**

There are genuine issues of material fact. The evidence does not support the claims alleged by Plaintiff. Defendants, therefore, respectfully request that their Motion for Summary Judgment be granted.

Dated: February 3, 2009.

        Respectfully submitted,

        DUNLAP & SEEGER, P.A.


        By: /s/ Gregory J. Griffiths
            Gregory J. Griffiths
            Registration No. 185553

        Attorney for Defendants
        206 S. Broadway, Suite 505
        Post Office Box 549
        Rochester, Minnesota  55903
        Telephone: (507) 288-9111
        Facsimile:  (507) 288-9342