UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Phillip David Schaub, <br><br>　　　　Plaintiff, <br><br>vs. <br><br>The County of Olmsted, Olmsted County Adult Detention Center; Steven VonWald; Bernard Sizer; John Does 1-6, <br><br>　　　　Defendants. | Case No. 06-CV-02725 JMR/FLN <br><br><br>**AFFIDAVIT OF** <br>**STACY SINNER** |

STATE OF MINNESOTA )
　　　　　　　　　　　　) ss.
COUNTY OF OLMSTED )

　　　　Stacy Sinner, being duly sworn on oath, deposes and says:

　　　　1.　　My name is Stacy Sinner. I am the Director of Detention Services for Olmsted County. I am responsible for overall supervision of the Olmsted County Adult Detention Center ("ADC").

　　　　2.　　I have worked for the Olmsted County Sheriff's Office since June 6, 1989. I started as a correctional officer. I was promoted to Detention Sergeant on September 12, 1995, Detention Captain on August 30, 1999, and Director of Detention Services on May 22, 2007. I have also acted as a consultant for the Minnesota Sheriff's Association and National Institute of Corrections since 1993. I was certified as an American Jail Association Certified Jail Manager in September of 1999.

3. The ADC is a modern detention facility that is connected to the Olmsted County Government Center. Construction was completed in 1993. At the times relevant to this case, the ADC had an intake unit, a main housing unit, a work release unit, a female unit, and a special management unit. The ADC has a medical staff that provides medical care to detainees. At all times relevant to this case, the ADC was accredited by the American Correctional Association ("ACA") and the National Commission on Correctional Health Care ("NCCHC"). The ACA accreditation indicates the ADC met or exceeded the standards set by the ACA. The NCCHC accreditation certified that the ADC was complying with NCCHC standards for health services in jails. The ACA and NCCHC accreditations are for three year periods. The 2000 ACA Accreditation Report included the following finding on Page 8: "The team was very impressed with the professionalism of the nurses and physicians. They are concerned about their patients and very responsible in delivering care."

4. The ADC contracts with the Olmsted County Public Health Services for health care. The ADC provides full health care services for detainees after they have been booked into the ADC. The ADC does not provide medical care to detainees in the work release unit. Detainees in the work release unit are responsible for their own medical care. They are given time away from the ADC to obtain the care that they need. The medical unit is staffed by one and one-half nursing positions and a part-time physician, psychologist, and social worker. The nurses staff the ADC during normal business hours, Monday through Friday. The physician is present two days a week during normal business hours. Registered Nurse Patricia Crandall has supervised the

medical unit for many years and is on site each weekday. The medical staff is supervised by Mayo Clinic physician Robin Molella. Dr. Molella provides services to the ADC through a contract between Olmsted County and Mayo Clinic. The ADC has a policy to provide detainees with necessary medical care. A true and correct copy of the ADC policy is attached as Exhibit A.

5. The medical unit consists of a waiting room, storage room, tub room, and two clinic rooms. Detainees are sent to Olmsted Community Hospital or St. Mary's Emergency Trauma Unit for emergency care.

6. The ADC is a handicapped accessible facility. Both the main housing unit and work release unit have handicap accessible cells and showers. For example, the handicapped accessible cells have suitably wide doors, grab bars for the toilets and showers, have a shower bench and have no door thresholds which would impair movement by a wheelchair. We ensure that disabled detainees have full access to the services provided by the ADC. Mr. Schaub was housed in a handicap accessible cell. The cell he was housed in was 68 feet from the command post in that unit.

7. At the time Plaintiff was incarcerated in the ADC, I was the Operational Captain of the facility. That means I was primarily responsible for overseeing day-to-day operations. Around the time Plaintiff was to begin serving his sentence, I became aware that he was a paraplegic and we were going to attempt to house him in the work release unit. It was my understanding Mr. Schaub had been ordered to serve 180 days in the ADC following his guilty plea for criminal sexual conduct. A true and correct copy of his Sentencing Order from our records is attached to this Affidavit as Exhibit B. Sergeant

Alfredo Castellanos was given the responsibility for managing Plaintiff's intake into the facility. Sergeant Castellanos met with Mr. Schaub on March 4, 2003, upon his intake to the ADC. Sergeant Castellanos wrote up a written memorandum to ADC staff regarding Mr. Schaub. A true and correct copy of that memorandum is attached to this Affidavit as Exhibit C. Ultimately, we agreed to allow Mr. Schaub extra time away from the ADC to take care of his personal needs, including use of the toilet and taking a shower. We concluded it would be easier for Mr. Schaub to take care of his needs at his home. We also permitted Mr. Schaub to have a second mattress, we advised him that he could bring in a padded toilet seat, and we notified him that we would consider other adaptive devices to suit his needs upon his request. To my knowledge, all his needs were being met during the initial period of his incarceration.

8. At the end of April, I was advised that Mr. Schaub had broken his leg. True and correct copies of the written reports from Deputies Carlson and Root are attached to this Affidavit as Exhibits D and E, respectively. According to Deputy Carlson, he was approached by Mr. Schaub at 9:25 A.M. on April 29, 2003. Mr. Schaub told Deputy Carlson he had fallen "about 20 minutes ago trying to go to the toilet." Deputy Carlson's report indicates he had just done a well being check "at 9:20 or so and saw Schaub in his cell in his wheel chair facing away from me." Deputy Carlson allowed Mr. Schaub to leave at that time to seek medical care. Deputy Carlson also wrote that he offered and Mr. Schaub turned down transportation to the hospital. Mr. Schaub was then released from custody to allow him to recover from his broken leg.

9. I am aware that Mr. Schaub is claiming he was in his cell for some period

of time after his alleged fall calling for help. I think it is unlikely that occurred due to the design and environment of the facility. The command post was only 68 feet away from his cell and there were many other people in the unit just feet from his cell. Someone would have heard him if he did call for help. In addition, as noted in Deputy Carlson's report, Deputy Carlson has just walked by Mr. Schaub's cell five minutes earlier and had seen Mr. Schaub seated in his wheel chair.

10. On May 12, 2003, Mr. Schaub moved the Court to allow him to serve the balance of his sentence on electronic home monitoring. On May 13, 2003, Judge Jodi L. Williamson wrote ADC Director Steven VonWald to obtain input on whether the ADC could accommodate Mr. Schaub's needs. A true and correct copy of Judge Williamson's letter from ADC records is attached to this Affidavit as Exhibit F. A true and correct copy of Director VonWald's response to Judge Williamson is attached to this Affidavit as Exhibit G. Director VonWald wrote that it was his belief that the ADC had met Mr. Schaub's needs, that he had been given sufficient time out of the ADC to meet his needs, that he had been instructed to bring in a toilet lift, and that he was being given whatever mattress and cushions he needed to take care of his extremity problems. Director VonWald wrote that he felt we could meet Mr. Schaub's needs. On May 16, 2003, Judge Williamson denied the request to modify Mr. Schaub's sentence. A true and correct copy of Judge Williamson's Order denying the motion from ADC records is attached to this Affidavit as Exhibit H.

11. On July 16, 2003, Mr. Schaub returned to the ADC. Because he did not have a job, he was not eligible to be in the work release area. He was put in the main

housing unit. True and correct copies of the ADC medical chart notes regarding the medical care provided to Mr. Schaub on his return to the ADC are attached as Exhibit I. The records show Mr. Schaub was seen by our medical staff on July 16, 2003, July 17, 2003, July 22, 2003, July 23, 2003, and July 24, 2003. Once our medical staff determined on July 24, 2003 that the ADC could not continue to provide Mr. Schaub with the care he needed, he was released. True and correct copies of Judge Williamson's orders from ADC records regarding his release are attached as Exhibit J and K, respectively.

12. I am aware that Mr. Schaub is making numerous claims including that we denied him proper medical care. I do not believe this is true. The work release and main housing units being occupied by Mr. Schaub are handicapped accessible. The medical records make clear that our medical staff worked very hard to care for Mr. Schaub's needs and once it was determined we could not care for his needs, he was transferred to the hospital.

13. The Olmsted County Adult Detention Center is regularly called upon by the National Institute of Corrections to host agencies from around the country who are considering direct supervision as a detainee management style as we are considered leaders in the nation. We use a community standard of care in an internationally recognized medical community and are serious about our obligations to every member of our community, including detainees.

FURTHER, YOUR AFFIANT SAYETH NOT.

Dated: February 2, 2009.

*Stacy Sinner*
Stacy Sinner

Subscribed and sworn to before me
this 2ND day of February, 2009.

*Heather Olsen*
Notary Public

[Notary Seal: HEATHER OLSEN, Notary Public, Minnesota]

7